# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| MICHAEL CARDENAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK L.L.C.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff MICHAEL CARDENAS ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant DISH NETWORK, LLC ("Dish" or "Defendant"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record:

## I.    NATURE OF THE ACTION

1.     This is a data breach class action brought on behalf of current and former employees and their affected family members whose sensitive personal information was stolen by cybercriminals in a massive ransomware attack at Dish starting in or around February 23, 2023 (the "Data Breach").[1]

2.     Specifically, on February 23, 2023, Dish announced that it had experienced a network outage that affected its internal servers and IT telephony.[2] Following this network outage, Defendant

---

[1] Office of the Maine Attorney General, Data Breach Notifications, https://apps.web.maine.gov/online/aeviewer/ME/40/ec8cf5c5-3048-4b22-baa9-10438a51e6f5.shtml (last accessed on June 1, 2023).

[2] *Id.*

retained the services of cyber-security experts and outside advisors to assist in the evaluation of the situation.[3] In the following days, Dish learned and disclosed that certain data had been extracted from its IT systems as part of this incident.[4] The Data Breach reportedly involved at least 296,851 individuals.[5]

3. Information stolen in the Data Breach included individuals' sensitive information, including at least, Social Security numbers, vaccination records, health insurance information, financial account numbers, driver's license or other government ID numbers, dates of birth, and payment card numbers (collectively, the "Private Information" or "PHI and PII"). Plaintiff and Class Members face an ongoing and lifetime risk of identity theft, which is heightened by the exposure of their Social Security numbers.

4. As a result of the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of loss of the value of their private and confidential information, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

5. Plaintiff's and Class Members' sensitive personal information—which was entrusted to Defendant, their officials and agents—was compromised, unlawfully accessed, and stolen due to the Data Breach.

6. Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

---

[3] *Id.*
[4] *Id.*
[5] *Id.*

CLASS ACTION COMPLAINT

7. Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks of this type.

8. Upon information and belief, the mechanism of the ransomware attack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known and foreseeable risk to Defendant, and Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

9. In addition, Defendant and its employees failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant properly monitored its property, it would have discovered the intrusion sooner.

10. Because of the Data Breach, Plaintiff and Class Members suffered injury and damages in the form of theft and misuse of their Private Information.

11. In addition, Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained is now in the hands of data thieves.

12. Armed with the Private Information accessed in the ransomware attack, data thieves can commit a variety of crimes including, for example, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' health information to target other phishing and hacking intrusions based on their individual health needs, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

CLASS ACTION COMPLAINT

13.     As a further result of the Data Breach, Plaintiff and Class Members have been exposed to a substantial and present risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

14.     Plaintiff and Class Members have and may also incur out of pocket costs for, for example, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

15.     As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer damages and economic losses in the form of:  the loss of time needed to: take appropriate measures to avoid unauthorized and fraudulent charges; change their usernames and passwords on their accounts; investigate, correct and resolve unauthorized debits, charges, and fees charged against their accounts; and deal with spam messages and e-mails received as a result of the Data Breach. Plaintiff and Class Members have likewise suffered and will continue to suffer an invasion of their property interest in their own Private Information such that they are entitled to damages for unauthorized access to and misuse of their Private Information from Defendant. Further, Plaintiff and Class Members presently and will continue to suffer from damages associated with the unauthorized use and misuse of their Private Information as thieves will continue to use the stolen information to obtain money and credit in their name for several years.

16.     Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed and/or removed from the network during the Data Breach.

17.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring and identity restoration services funded by Defendant.

-4-

18.    Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct.

## II.    **PARTIES**

19.    Plaintiff Michael Cardenas is a resident and citizen of Tennessee. Plaintiff Cardenas is acting on his own behalf and on behalf of others similarly situated. Defendant obtained and continues to maintain Plaintiff Cardenas's Private Information and has a legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff Cardenas would not have entrusted his Private Information to Defendant had he known that it would fail to maintain adequate data security. Plaintiff Cardenas's Private Information was compromised and disclosed as a result of the Data Breach.

20.    Defendant Dish Network L.L.C. is a Colorado limited liability corporation headquartered at 9601 S. Meridian Blvd., Englewood, Colorado 80112.

## III.    **JURISDICTION AND VENUE**

21.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members exceeds 100, many of whom have different citizenship from Defendant, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

22.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant is based in this District, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

CLASS ACTION COMPLAINT

# **FACTUAL ALLEGATIONS**

## ***Defendant's Business***

24.     Defendant is a telecommunications provider that provides services to approximately 19 million customers nationwide and currently employs more than 14,000 people throughout the United States.[6]

25.     Defendant's services also include consumer wireless services through Boost Mobile and other brands.[7]

26.     In the ordinary course of being employed by Defendant, employees are required to provide Defendant with sensitive, personal and private information (including both PHI and PII) such as, including but not limited to, the following information:

- Social Security number

- Vaccination record

- Health insurance information

- Financial account number

- Driver's license number or other government ID number

- Date of birth

- Payment card number

27.     As a condition of being employed by Defendant, Plaintiff was required to disclose some or all of the Private Information listed above.[8]

---

[6] https://about.dish.com/company-info
[7] *Id.*
[8] Dish Network, *Privacy Policy*, https://my.dish.com/privacy-policy#p1 (last accessed on June 1, 2023).

CLASS ACTION COMPLAINT

28.     On information and belief, in the course of collecting Private Information from current and former employees, including Plaintiff, Defendant promised to provide confidentiality and adequate security for employee data through its applicable privacy policy and through other disclosures.

### The Ransomware Attack and Data Breach

29.     In February 2023, Defendant experienced a cybersecurity incident where some of its systems were accessed, and information was extracted by an unknown actor.[9]

30.     On or about February 23, 2023, Defendant announced that it "experienced a network outage that affected internal servers and IT telephony."[10]  Defendant shut down its internal network and enlisted the services of cyber-security experts to assist in the evaluation of the situation.[11] As a result of this evaluation, Defendant's learned that the network outage "was due to a cybersecurity incident" wherein cybercriminals gained unauthorized access to Defendant's computer systems and networks and acquired copies of Private Information held on Defendant's systems.[12]

31.     Defendant admits that "certain employee-related records and personal information (along with information of some former employees, family members and a limited number of other individuals) were among the data extracted."[13] The subsequent investigation showed the cybercriminal(s) gained access to current and former employees' and their family members' Private Information, which included, at least, Social Security numbers, vaccination records, health insurance information, financial account numbers, driver's license or other government ID numbers, dates of birth, and payment card numbers.[14]

---

[9] Office of the Maine Attorney General, Data Breach Notifications, https://apps.web.maine.gov/online/aeviewer/ME/40/ec8cf5c5-3048-4b22-baa9-10438a51e6f5.shtml  (last accessed on June 1, 2023).
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] Exhibit 1, Notice of Data Breach Letter to Plaintiff Cardenas dated May 15, 2023 (redacted.)

-7-

32. The cyber-attack was expressly designed and targeted to gain access to private and confidential data, including (among other things) the personal information, or PHI and PII, of Defendant's current and former employees and their family members, including Plaintiff and Class. Evidence of this specific targeting of Private Information is the fact that, according to Defendant's own forensic investigation, an unauthorized actor was able to extract the Private Information.

33. Defendant notified impacted individuals on or about May 15, 2023.[15]

34. As a result of Defendant's delay in providing notice, the risk of harm to Plaintiff and Class Members has increased. Consumer Reports has noted: "One thing that does matter is hearing about a data breach quickly. That alerts consumers to keep a tight watch on credit card bills and suspicious emails. It can prompt them to change passwords and freeze credit reports…. If consumers don't know about a breach because it wasn't reported, they can't take action to protect themselves."[16]

35. Defendant also failed to encrypt the PHI and PII stored on its server, evidenced by the fact that hackers were able to steal the Private Information in a readable form.

36. Defendant acknowledges its cybersecurity and data protection was inadequate because it admits after the ransomware attack that it "took steps to prevent further access to the impacted systems."[17]

37. Defendant also acknowledges that Plaintiff and Class Members face a substantial and present risk of identity theft because it is actively encouraging them to "regularly review [] account statements and credit history for any signs of unauthorized transactions or activity, and to remain vigilant against threats of identity theft or fraud."[18]

---

[15] Plaintiff's Notice of Data Breach is dated May 15, 2023.
[16] The Data Breach Next Door, Consumer Reports, Jan. 31, 2019, available at:
https://www.consumerreports.org/data-theft/the-data-breach-next-door/ (last accessed on June 1, 2023).
[17] Office of the Maine Attorney General, Data Breach Notifications,
https://apps.web.maine.gov/online/aeviewer/ME/40/ec8cf5c5-3048-4b22-baa9-10438a51e6f5.shtml
(last accessed on June 1, 2023).
[18] *Id.*

CLASS ACTION COMPLAINT

38.    Based on the Notice of Data Breach letter he received, which informed Plaintiff that his, and his family members', Private Information was extracted from Defendant's network and computer systems, Plaintiff believes his Private Information was stolen from Defendant's networks (and subsequently sold) as a result of the Data Breach.

39.    Further, the removal of the Private Information from Defendant's system demonstrates that this cyberattack was targeted.

40.    Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

41.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

42.    Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches in the restaurant services industry preceding the date of the breach.

43.    Data breaches, including those perpetrated against the telecommunication services sector of the economy, have become widespread.

44.    In 2022, there were 1,802 data breaches, nearly eclipsing 2021's record wherein 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[19]  The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records

---

[19] *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6 (last accessed on June 1, 2023).

CLASS ACTION COMPLAINT

(9,700,238) in 2020.[20] In fact, this year alone, Verizon, AT&T, and T-Mobile, telecommunications companies like Defendant, have all been targeted by hackers and have suffered similar data breaches over the past several years.[21]

45.     Indeed, cyber-attacks, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendant' industry, including Defendant.

### *Defendant Fails to Comply with FTC Guidelines*

46.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

47.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

---

[20] See *Data Breaches Hit Lots More People in 2022* (Jan. 25, 2023) https://www.cnet.com/tech/services-and-software/data-breaches-hit-lots-more-people-in-2022/ (last accessed June 1, 2023).

[21] Mike Dano, Verizon, AT&T, T-Mobile, and Dish have all been targets of hacks this year (March 10, 2023) available at (https://www.lightreading.com/security/verizon-atandt-t-mobile-and-dish-have-all-been-targets-of-hacks-this-year/d/d-id/783768) (last accessed on June 1, 2023).

### CLASS ACTION COMPLAINT

48.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

49.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

50.     Defendant failed to properly implement basic data security practices, and its failure to employ reasonable and appropriate measures to protect against unauthorized access to customer PHI and PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

51.     Defendant was at all times fully aware of their obligation to protect the PHI and PII of its employees and their affected family members. Defendant were also aware of the significant repercussions that would result from its failure to do so.

### Defendant Failed to Comply with Industry Standards

52.     A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendant's cybersecurity practices.

53.     Best cybersecurity practices that are standard in Defendant's industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

CLASS ACTION COMPLAINT

54.     Upon information and belief, Defendant failed to meet the minimum standards of the following cybersecurity frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

55.     These foregoing frameworks are existing and applicable industry standards in Defendant's industry. Defendant knew it was a target for hackers. Despite understanding the risks and consequences of inadequate data security, Defendant failed to comply with these accepted standards, thereby opening the door to the cyber-attack and causing the Data Breach.

## ***Defendant's Breach***

56.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems, networks, and data.  Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.  Failing to adequately protect employees' Private Information;

c.  Failing to properly monitor its own data security systems for existing intrusions, encryptions, brute-force attempts, and clearing of event logs;

d.  Failing to apply all available security updates;

e.  Failing to install the latest software patches, update its firewalls, check user account privileges, or ensure proper security practices;

f.  Failing to practice the principle of least-privilege and maintain credential hygiene;

CLASS ACTION COMPLAINT

g.   Failing to avoid the use of domain-wide, admin-level service accounts;

h.   Failing to employ or enforce the use of strong randomized, just-in-time local administrator passwords, and;

i.   Failing to properly train and supervise employees in the proper handling of inbound emails.

57.    As the result of computer systems in dire need of security upgrading and inadequate procedures for handling cybersecurity threats, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

58.    Accordingly, as outlined below, Plaintiff and Class Members now face a substantial, increased, and present risk of fraud and identity theft.

***Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft***

59.    Defendant was well aware that the Private Information it collects is highly sensitive, and of significant value to those who would use it for wrongful purposes, like the operators who perpetrated this cyber-attack.

60.    The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[22]

61.    That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it.

62.    They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, take over victims' identities in order to engage in

---

[22] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, available at: https://www.gao.gov/assets/gao-07-737.pdf (last accessed on June 1, 2023) ("GAO Report").

CLASS ACTION COMPLAINT

illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim.

63.    For example, armed with just a name and date of birth, a data thief can use a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number.

64.    Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

65.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[23]

66.    Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

67.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

---

[23] *See* https://www.identitytheft.gov/Steps (last accessed on June 1, 2023).

CLASS ACTION COMPLAINT

68.    In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

69.    A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[24]



70.    What's more, theft of Private Information is also gravely serious. PII is a valuable property right.[25]

71.    Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

---

[24] *See* Jason Steele, *Credit Card and ID Theft Statistics*, CreditCards.com (Oct. 23, 2020), available at: https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last accessed on June 1, 2023).

[25] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

CLASS ACTION COMPLAINT

72.     It must also be noted there may be a substantial time lag – measured in years – between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

73.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

74.     Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

75.     There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and Class Members are at a substantial and immediate present risk of fraud and identity theft that will continue for many years.

76.     Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

77.     Sensitive Private Information can sell for as much as $363 according to the Infosec Institute.

78.     PII is particularly valuable because criminals can use it to target victims with frauds and scams.

CLASS ACTION COMPLAINT

79. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

80. The PII of consumers and employees remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200.

81. Social Security numbers are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud.

82. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.

83. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

84. Moreover, it is not an easy task to change or cancel a stolen Social Security number.

85. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he

CLASS ACTION COMPLAINT

credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[26]

86.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[27]

87.    Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."

88.    Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

89.    According to account monitoring company LogDog, medical data sells for $50 and up on the Dark Web.[28]

---

[26] *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, Brian Naylor, Feb. 9, 2015, available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed on June 1, 2023).

[27] *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, Tim Greene, Feb. 6, 2015, available at: http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed on June 1, 2023).

[28] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content (last accessed June 1, 2023)

CLASS ACTION COMPLAINT

90.    It must also be noted there may be a substantial time lag – measured in years – between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used.

91.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

92.    Driver's license numbers are also incredibly valuable. "Hackers harvest license numbers because they're a very valuable piece of information. A driver's license can be a critical part of a fraudulent, synthetic identity – which go for about $1200 on the Dark Web.  On its own, a forged license can sell for around $200."[29]

93.    According to national credit bureau Experian:

> A driver's license is an identity thief's paradise. With that one card, someone knows your birthdate, address, and even your height, eye color, and signature. If someone gets your driver's license number, it is also concerning because it's connected to your vehicle registration and insurance policies, as well as records on file with the Department of Motor Vehicles, place of employment (that keep a copy of your driver's license on file), doctor's office, government agencies, and other entities. Having access to that one number can provide an identity thief with several pieces of information they want to know about you. Next to your Social Security number, your driver's license number is one of the most important pieces of information to keep safe from thieves.

94.    According to cybersecurity specialty publication CPO Magazine, "[t]o those unfamiliar with the world of fraud, driver's license numbers might seem like a relatively harmless piece of

---

[29] https://www.forbes.com/sites/leemathews/2021/04/20/hackers-stole-customers-license-numbers-from-geico-in-months-long-breach/?sh=3e4755c38658 (last accessed on June 1, 2023).

CLASS ACTION COMPLAINT

information to lose if it happens in isolation."[30] However, this is not the case. As cybersecurity experts point out:

> "It's a gold mine for hackers. With a driver's license number, bad actors can manufacture fake IDs, slotting in the number for any form that requires ID verification, or use the information to craft curated social engineering phishing attacks."[31]

95.     Victims of driver's license number theft also often suffer unemployment benefit fraud, as described in a recent New York Times article.[32]

96.     At all relevant times, Defendant knew or reasonably should have known these risks, the importance of safeguarding Private Information, and the foreseeable consequences if its data security systems were breached and strengthened their data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

***Plaintiff's and Class Members' Damages***

97.     To date, Defendant has done absolutely nothing to provide Plaintiff and Class Members with relief for the damages they have suffered as a result of the cyber-attack and data breach, including, but not limited to, the costs and loss of time they incurred because of the cyber-attack. The complimentary credit monitoring service offered by Defendant is wholly inadequate as the services are only offered for 24 months and it places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for that service, as opposed to automatically enrolling all victims of this cybercrime.

---

[30] https://www.cpomagazine.com/cyber-security/geico-data-breach-leaks-drivers-license-numbers-advises-customers-to-watch-out-for-fraudulent-unemployment-claims/ (last accessed on June 1, 2023).

[31] *Id.*

[32] *How Identity Thieves Took My Wife for a Ride,* NY Times, April 27, 2021, available at: https://www.nytimes.com/2021/04/27/your-money/identity-theft-auto-insurance.html (last accessed on June 1, 2023).

CLASS ACTION COMPLAINT

98.     Moreover, Defendant entirely fails to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PHI and PII.

99.     Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

### Plaintiff Cardenas's Experience

100.     Plaintiff Cardenas was required to provide his Private Information to Defendant in connection with his being an employee of Defendant beginning in or around April 2019 and continuing through the present.

101.     Plaintiff Cardenas is very careful about sharing his Private Information. Plaintiff Cardenas has never knowingly transmitted unencrypted sensitive PHI or PII over the internet or any other unsecured source. Plaintiff Cardenas stores any documents containing his sensitive PHI and PII in a safe and secure location or destroys the documents. Moreover, Plaintiff Cardenas diligently chooses unique usernames and passwords for his various online accounts.

102.     Plaintiff Cardenas only allowed Defendant to maintain, store, and use his Private Information because he believed that Defendant would use adequate security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information. As a result, Plaintiff Cardenas's Private Information was within the possession and control of Defendant at the time of the Data Breach.

103.     In or around May 2023, Plaintiff Cardenas received notice from Defendant that his Private Information had been improperly accessed during a "cybersecurity incident" in February 2023. Defendant notified Plaintiff and Class members that it "confirmed that certain employee-related records and personal information (along with information of some former employees, family members and a limited number of other individuals) were among the data extracted" and that this information includes their Social Security numbers, vaccination records, health insurance information, financial account numbers, driver's license

CLASS ACTION COMPLAINT

1

2

or other government ID numbers, dates of birth, and payment card numbers. There is no indication from

Defendant that the PHI and PII was encrypted or redacted in any way.

3

4

5

6

7

104.    Following the Data Breach, in or around April and May 2023, Plaintiff Cardenas suffered

fraud when he received multiple correspondence from various credit card agencies and auto loan agencies

thanking him for applying for a line of credit. However, Plaintiff Cardenas had not applied for any of the

loans in question.

8

9

10

11

12

13

14

15

16

17

18

19

20

105.    As a result of the Data Breach, Plaintiff Cardenas made reasonable efforts to mitigate the

impact of the Data Breach after receiving the data breach notification, including but not limited to:

researching the Data Breach; reviewing credit reports and financial account statements for any indications

of actual or attempted identity theft or fraud; researching the credit monitoring and identity theft protection

services offered by Defendant; checking his credit monitoring service. Plaintiff Cardenas has spent at least

five hours dealing with the Data Breach; valuable time Plaintiff Cardenas otherwise would have spent on

other activities, including but not limited to recreation. Plaintiff and Class Members will need identity

theft protection services and credit monitoring services for their respective lifetimes, considering the

immutable nature of the PHI and PII at issue, which includes Social Security, driver's license numbers,

and medical information. This time, which has been lost forever and cannot be recaptured, was spent at

Defendant's direction.

21

22

23

24

25

26

106.    As a result of the Data Breach, Plaintiff Cardenas has suffered emotional distress as a result

of the release of his Private Information, which he believed would be protected from unauthorized access

and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his Private

Information for purposes of identity theft and fraud. Plaintiff Cardenas is very concerned about identity

theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

27

28

107.    Plaintiff Cardenas suffered actual injury from having his Private Information compromised

as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of

CLASS ACTION COMPLAINT

his Private Information, a form of tangible property that Defendant obtained from Plaintiff Cardenas; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft, fraud, and misuse resulting from his Private Information being placed in the hands of criminals.

108.    As a result of the Data Breach, Plaintiff Cardenas anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Cardenas will continue to be at substantial and immediate risk of identity theft and fraud for years to come.

109.    Defendant acknowledged the risk posed to Plaintiff Cardenas and his Private Information. Indeed, Defendant offered a two-year credit monitoring service.

110.    Both Plaintiff and Class Members now face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft. Indeed, Plaintiff Cardenas has already suffered fraud in the form of criminals attempting to obtain lines of credit in his name.

111.    Plaintiff and Class Members have been and face a substantial risk of being targeted in the future, subjected to phishing, data intrusion, and other illegal actions based on their Private Information as potential fraudsters could use that information to target such schemes more effectively.

112.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the cyber-attack.

113.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the cyber-attack. Numerous courts have recognized the propriety of loss of value damages in related cases.

CLASS ACTION COMPLAINT

114.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts and records for misuse.

115.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the cyber-attack. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the cyber-attack relating to:

a.    Finding fraudulent charges;

b.    Canceling and reissuing credit and debit cards;

c.    Purchasing credit monitoring and identity theft prevention;

d.    Addressing their inability to withdraw funds linked to compromised accounts;

e.    Taking trips to banks and waiting in line to obtain funds held in limited accounts;

f.    Placing "freezes" and "alerts" with credit reporting agencies;

g.    Spending time on the phone with or at a financial institution to dispute fraudulent charges;

h.    Contacting financial institutions and closing or modifying financial accounts;

i.    Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

j.    Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

k.    Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

116.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the

CLASS ACTION COMPLAINT

storage of data or documents containing personal and financial information is not accessible online and that access to such data is password-protected.

117.    Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information—which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

118.    Plaintiff and Class Members were also injured and damaged by the delayed notice of this data breach, as it exacerbated the substantial and present risk of harm by leaving Plaintiff and Class Members without the knowledge that would have enabled them to take proactive steps to protect themselves.

119.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at a present and definitely increased risk of future harm.

## IV.    CLASS ACTION ALLEGATIONS

120.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

121.    Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4) and/or 23(c)(5).

122.    Plaintiff proposes the following Class definitions, subject to amendment based on information obtained through discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

> National Class: All persons whose PHI and/or PII was compromised as a result of the cyber-attack that Dish discovered on or about February 23, 2023, and who were sent notice of the Data Breach (the "Class").

CLASS ACTION COMPLAINT

Excluded from the Class are Defendant's officers and directors; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

123.    Plaintiff reserves the right to amend the definitions of the Class or add a Class if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

124.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

125.    <u>Numerosity</u>.  The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of hundreds of thousands of Defendant's current and former employees whose data was compromised in the cyber-attack and data breach.

126.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

      a)    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

      b)    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the cyber-attack;

      c)    Whether Defendant's data security systems prior to and during the cyber-attack complied with applicable data security laws and regulations;

-26-

d)     Whether Defendant's data security systems prior to and during the cyber-attack were consistent with industry standards;

e)     Whether Defendant owed a duty to Class Members to safeguard their Private Information;

f)     Whether Defendant breached its duty to Class Members to safeguard their Private Information;

g)     Whether computer hackers obtained Class Members' Private Information in the cyber-attack;

h)     Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i)     Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j)     Whether Defendant owed a duty to provide Plaintiff and Class Members notice of this data breach, and whether Defendant breached that duty;

k)     Whether Defendant's conduct was negligent;

l)     Whether Defendant's acts, inactions, and practices complained of herein amount to an invasion of privacy;

m)     Whether Defendant's actions violated federal law; and

n)     Whether Plaintiff and Class Members are entitled to damages, civil penalties, and/or injunctive relief.

127.     <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the cyber-attack.

CLASS ACTION COMPLAINT

128.  <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

129.  <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

130.  <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

131.  Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and All Class Members)

132.  Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 131.

-28-

CLASS ACTION COMPLAINT

133.   As a condition of receiving employment from Defendant, Defendant's current and former employees (including Plaintiff and Class Members) were obligated to provide Defendant with the sensitive PII and PHI referenced herein.

134.   Plaintiff and the Class entrusted their PHI and PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PHI and PII for business purposes only, and/or not disclose their PHI and PII to unauthorized third parties.

135.   Defendant had full knowledge of the sensitivity of the PHI and PII and the types of harm that Plaintiff and the Class could and would suffer if the PHI and PII were wrongfully disclosed.

136.   Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PHI and PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

137.   Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PHI and PII of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

138.   Defendant also had a duty to exercise appropriate clearinghouse practices to remove former employees' PHI and PII that Defendant were no longer required to retain pursuant to regulations.

139.   Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PHI and PII of Plaintiff and the Class.

140.   Defendant's duty to use reasonable security measures arose as a result of the contractual relationship that existed between Defendant and Plaintiff and the Class.

141.   Defendant was also subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

-29-

CLASS ACTION COMPLAINT

142.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

143.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PHI and PII of Plaintiff and the Class, the critical importance of providing adequate security of that information, and the necessity for encrypting or redacting PHI and PII stored on Defendant's systems.

144.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions to not comply with industry standards for the safekeeping of the PHI and PII of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

145.    Plaintiff and the Class had no ability to protect their PHI and PII that was in, and possibly remains in, Defendant's possession.

146.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

147.    Defendant had and continues to have a duty to adequately disclose that the PHI and PII of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PHI and PII by third parties.

148.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PHI and PII of Plaintiff and the Class.

149.    Defendant has admitted that the PHI and PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

150.    Defendant, through its actions and/or omissions, unlawfully breached their duties to Plaintiff and the Class by failing to implement industry standard protocols and exercise reasonable care in protecting and safeguarding the PHI and PII of Plaintiff and the Class during the time the PHI and PII was within Defendant's possession or control.

151.    Defendant improperly and inadequately safeguarded the PHI and PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

152.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PHI and PII of Plaintiff and the Class in the face of increased risk of theft.

153.    Defendant, through its actions and/or omissions, unlawfully breached their duty to Plaintiff and the Classes by failing to have appropriate procedures in place to detect and prevent dissemination of their current and former employees' and their families' PHI and PII.

154.    Defendant, through its actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

155.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PHI and PII of Plaintiff and the Class would not have been compromised.

156.    There is a close causal connection between Defendant's failure to implement security measures to protect the PHI and PII of Plaintiff and the Class and the present harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PHI and PII of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PHI and PII by adopting, implementing, and maintaining appropriate security measures.

157.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses,

CLASS ACTION COMPLAINT

such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

158.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PHI and PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

159.    Defendant violated Title II of HIPAA and regulations implemented by the HHS pursuant to HIPAA, as well as the standards of conduct established by HIPAA and its attendant regulations, which required Defendant to implement security measures to protect PHI.

160.    Defendant's violation of Section 5 of the FTC Act and Title II of HIPAA, including HIPAA regulations HHS has implemented pursuant to Title II, as well as the standards of conduct established by these statutes and regulations, constitutes negligence per se.

161.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

162.    Plaintiff and the Class are within the class of persons that the HIPAA was intended to protect.

163.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

164.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PHI and PII is used; (iii) the compromise, publication, and/or theft

CLASS ACTION COMPLAINT

of their PHI and PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI and PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PHI and PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI and PII of Plaintiff and the Class; and (viii) costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI and PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

165.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

166.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PHI and PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI and PII in their continued possession.

167.    Plaintiff and Class Members are therefore entitled to damages, including actual and compensatory damages, restitution, declaratory and injunctive relief, and attorney fees, costs, and expenses.

///

CLASS ACTION COMPLAINT

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and All Class Members)

168.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 131.

169.    Plaintiff and the Class Members delivered their Private Information to Defendant as part of the process of obtaining employment with Defendant.

170.    Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform their obligations and manage Plaintiff's and Class Member's data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

171.    In providing their Private Information, Plaintiff and Class Members entered into an implied contract with Defendant whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' Private Information.

172.    In delivering their Private Information to Defendant, Plaintiff and the Class intended and understood that Defendant would adequately safeguard that data.

173.    Plaintiff and the Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

174.    Defendant accepted possession of Plaintiff's and Class Members' personal data for the purpose of providing employment to Plaintiff and Class Members.

175.    Had Defendant disclosed to Plaintiff and Class Members that Defendant did not have adequate computer systems and security practices to secure employees' and their families' Private

-34-

Information, Plaintiff and Class Members would not have provided their Private Information to Defendant.

176.    Defendant recognized that their current and former employees' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

177.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

178.    Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard their data.

179.    Defendant breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their Private Information.

180.    As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' Private Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Private Information; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed classes entrusted Defendant with their Private Information; and (h) the continued and substantial risk to Plaintiff's and Class Members' Private Information, which remains in the Defendant's possession of Defendant with in-adequate measures to protect Plaintiff's and Class Members' Private Information.

CLASS ACTION COMPLAINT

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

181.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 131.

182.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable Private Information.

183.    Defendant enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

184.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

185.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

186.    Defendant acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

187.    If Plaintiff and Class Members knew that Defendant had not secured their PHI and PII, they would not have agreed to provide their PII to Defendant.

188.    Plaintiff and Class Members have no adequate remedy at law.

189.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the

CLASS ACTION COMPLAINT

opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their PHI and PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect Private Information in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

190.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**COUNT IV**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of Plaintiff and All Class Members)**

191.    Plaintiff and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 131.

192.    Plaintiff brings this Count on his own behalf and on behalf of the Class.

193.    This Count is brought under the federal Declaratory Judgment Act, 28 U.S.C. §2201.

194.    Plaintiff and Class Members entered into an implied contract that required Defendant to provide adequate security for the Private Information it collected from Plaintiff and Class Members.

CLASS ACTION COMPLAINT

195.     Defendant owes a duty of care to Plaintiff and Class Members requiring them to adequately secure PHI and PII.

196.     Defendant still possesses PHI and PII regarding Plaintiff and Class Members.

197.     Since the Data Breach, Defendant has announced few if any specific and significant changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent further attacks.

198.     Defendant has not satisfied their contractual obligations and legal duties to Plaintiff and Class Members. In fact, now that Defendant's insufficient data security is known to hackers, the Private Information in Defendant's possession is even more vulnerable to cyberattack.

199.     Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PHI and PII and Defendant's failure to address the security failings that lead to such exposure.

200.     There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Data Breach to meet Defendant's contractual obligations and legal duties.

201.     Plaintiff, therefore, seeks a declaration (1) that Defendant's existing security measures do not comply with their contractual obligations and duties of care to provide adequate security, and (2) that to comply with their contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

    a.     Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

CLASS ACTION COMPLAINT

b.  Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

d.  Ordering that Defendant segment employee data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

e.  Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

f.  Ordering that Defendant conduct regular computer system scanning and security checks;

g.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.  Ordering Defendant to meaningfully educate their current, former, and prospective customers about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and Class Members, request judgment against Defendant and that the Court grant the following:

A.  For an Order certifying the Class, and appointing Plaintiff and her Counsel to represent the Class;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members;

CLASS ACTION COMPLAINT

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.    requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes;

v.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

vi.    prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vii.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

viii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

CLASS ACTION COMPLAINT

    ix.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

    x.   requiring Defendant to segment data by, among other things, creating firewalls and controls so that if one area of Defendant's network is compromised, hackers cannot gain access to portions of Defendant's systems;

    xi.   requiring Defendant to conduct regular database scanning and securing checks;

    xii.   requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

    xiii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

    xiv.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

    xv.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

    xvi.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

    xvii.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a

CLASS ACTION COMPLAINT

qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.     For an award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law in an amount to be determined;

E.     For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.     For prejudgment interest on all amounts awarded; and

G.     Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Date: June 2, 2023          Respectfully submitted,

                      /s/*Phil Krzeski*
                      Phil Krzeski (OH Bar #0095713)
                      Bryan Bleichner (MN Bar #0326689)
                      **CHESTNUT CAMBRONNE**
                      100 Washington Ave. South, Suite 1700
                      Minneapolis, MN 55401
                      Telephone: (612) 767-3163
                      Facsimile: (612) 336-2940
                      pkrzeski@chestnutcambronne.com
                      bbleichner@chestnutcambronne.com

                      M. Anderson Berry, Esq.*
                      Gregory Haroutunian, Esq.*
                      Brandon P. Jack, Esq.*
                      **CLAYEO C. ARNOLD**
                      **A PROFESSIONAL CORPORATION**
                      865 Howe Avenue
                      Sacramento, CA 95825
                      Telephone: (916) 777-7777
                      Facsimile: (916) 924-1829
                      aberry@justice4you.com
                      gharoutunian@justice4you.com
                      bjack@justice4you.com

                      *Attorneys for Plaintiff and the Class*

-42-

CLASS ACTION COMPLAINT

*Pro hac vice* forthcoming

CLASS ACTION COMPLAINT